UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **MIMS RECYCLING OF RUSTON L L C** | **CASE NO. 3:24-CV-01434** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ARCH INSURANCE CO** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 20] filed by Defendant Arch Insurance Company ("Arch"). Plaintiff Mims Recycling of Ruston LLC ("Mims") has not filed an opposition.

For the reasons set forth herein, Arch's Motion for Summary Judgment is **GRANTED**.

**I.   FACTS AND PROCEDURAL HISTORY**

This lawsuit arises from an incident involving a damaged crane that Mims rented from Doggett. Mims rented a Link-Belt RTC 8050, Series II Rough Terrain Boom Crane ("Crane") from Doggett Industrial Crane Group, LLC ("Doggett"), for use at Mims worksite at the Shreveport/Bossier Port Authority.[1]

On October 11, 2022, Mims was operating the rented Crane to tip silos over on their side for removal from the site, when the Crane's boom failed during the operation, resulting in damage to the Crane.[2] On November 22, 2021 Arch and Mims

---
[1] [Doc. No. 20-1, p. 3].
[2] [Id.].

1

entered into a Commercial Contractors Equipment Policy ("Arch Policy").[3] Doggett demanded payment from Mims for the damaged Crane, and Mims submitted a claim to Arch under the Policy.[4]

However, the Arch Policy[5] excluded damage covered by "lifting, pulling, or pushing weight in excess of the rated capacity of the covered property."[6] Arch hired an expert mechanical engineer, Bryson Brewer, Ph.D., P.E. ("Brewer"), to determine the cause of the boom's failure[7] On November 17, 2022, Brewer conducted an inspection of the Crane and interviewed David Ally of Doggett at the Doggett Facility.[8] After a full inspection, Brewer provided a report of findings dated April 13, 2023, which determined that the Crane was overloaded beyond its rated capacity during the silo tipping operations.[9] Mims has neither filed an opposition nor provided an expert report of their own disputing Brewer's findings.

On September 6, 2024, Mims filed suit against Arch in the Third Judicial District Court of Lincoln Parish, Docket Number 63997.[10] On October 18, 2024, the lawsuit was removed to this Court based on diversity jurisdiction.[11] The pending Motion for Summary Judgment was filed by Arch on August 27, 2025.[12]

The issues have been briefed, and the Court is prepared to rule.

---

[3] [Id.].
[4] [Id.].
[5] [Doc. No. 20-2].
[6] [Id. at p. 18].
[7] [Doc. No. 20-1, p. 5].
[8] [Id.].
[9] [Doc. No. 20-5, p. 20].
[10] [Doc. No. 1-1].
[11] [Doc. No. 1].
[12] [Doc. No. 20].

## II. LAW AND ANALYSIS

### A. Standard of Review

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, [and] [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

3

In deciding unopposed summary judgment motions, the Fifth Circuit has noted that a motion for summary judgment cannot be granted simply because there was no opposition. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). The movant has the burden to establish the absence of a genuine issue of material fact and, unless it has done so, the court may not grant the motion, irrespective of whether any response was filed. *Powell v. Delaney*, 2001 WL 1910556, at 5–6 (W.D. Tex. June 14, 2001). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id.* at 1 & n.2; see also *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). See also: *UNUM Life Ins. Co. of America v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002) ("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("A summary judgment nonmovant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence.").

The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Further, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Courts "may not make credibility determinations or weigh the evidence" at

4

the summary judgment stage and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state.

### B. Policy Coverage

The Arch Policy states:

> We will not pay for a loss: that is caused directly or indirectly by:
>
> (e) Lifting, pulling, or pushing weight in excess of the rated capacity of the covered property.[13]

Brewer provided an expert report detailing that the Crane was overloaded beyond its rated capacity when used for tipping the silos. Specifically, Brewer details in his report:

> As indicated by Mr. Mims, the crane had been used to tip over 20 or more silos prior to the incident, and most of those events were not included in the EDR data. Since the silos were all the same size, the tipping operation performed on the prior silos was also loading the subject crane to or beyond its rated capacity as well. Therefore, the provided EDR data indicated the crane was being overloaded to and beyond its rated capacity during the silo tipping operations.[14]
>
> ***
>
> The Crane Rating Manual, Operator's Manual, ASME B30.5, and OSHA all provided instructions and guidance on the operation of mobile telescoping cranes like the subject crane that was not adhered to during Mims silo tipping operations. Specifically, loading the crane beyond

---

[13] [Doc. No. 20-2, p. 18].
[14] [Doc. No. 20-5, p. 17].

5

> its rated capacity, side loading the crane, dynamic/shock loading of the crane, and failing to account for wind were all performed during the tipping operations and were prohibited in the manuals and/or standards. As discussed above, these actions served to increase the stress on the boom beyond its strength, leading to the eventual boom fracture. Therefore, the structural overload failure of the crane boom was due to improper use of the crane in violation of the instructions and warnings provided in the manuals for the crane and relevant standards.[15]

Mims has not provided an expert report to dispute Brewer's findings. Since Mims filed no opposition, the Court accepts as undisputed the fact that the damage was caused by "lifting, pulling, or pushing weight in excess of the rated capacity of the covered property" as established by the Arch policy and Brewer's report.[16] The Court also finds that the Arch exclusion unambiguously excludes coverage for the damaged Crane under the terms of the Arch Policy.

### C. Bad Faith Claims

Mims argues that Arch acted in bad faith pursuant to La. R.S. 22:1973 and La. R.S. 22:1892. A cause of action for penalties under § 22:658 requires a showing that: (1) the insurer has received satisfactory proof of loss; (2) the insurer fails to tender payment within thirty days of receipt thereof; and (3) the insurer's failure to pay is arbitrary, capricious, or without probable cause. *Accord Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 526 (5th Cir. 2010). However, a plaintiff must first establish a valid, underlying substantive clam to which the insurance policy applies. *Id*.

---

[15] [Id. at p.18].
[16] [Id.].

Mims seemingly argues that they have a valid underlying claim for the damage to the rented Crane, but that claim fails because the cause of damage to the Crane was excluded under the Arch policy. Since there was no policy covering this type of damage subsequently there is not a valid underlying claim. Furthermore, Arch's denial of the claim was not arbitrary, capricious, or without probable cause as it was based on Brewer's expert report which concluded the loss was due to a policy exclusion. An insurer who denies a claim based on a reasonable and substantiated investigation is not liable for bad faith penalties under La. R.S. 22:1973 or La. R.S. 22:1892. *See Jacobs v. State Farm Mut. Auto. Ins. Co.*, No. 18-11126, 2019 U.S. Dist. LEXIS 92272 at *5 (E.D. La. June 3, 2019). Mims does not have a valid underlying substantive claim, so their bad faith claims also fail and will be dismissed.

### D. Duty to Defend

Arch notes that the policy is not a liability policy, but an indemnity policy.[17] In an Indemnity policy the duty to defend rules for liability policies do not apply. *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987). The Louisiana Supreme Court explained in *Meloy*, that a "cause of action under a liability insurance policy accrues when the liability attaches[,]" but "an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." *Id.* (citation omitted).

---

[17] [Doc. No. 20-1, p. 14].

Insurers issuing first party property indemnity policies do not owe a duty to defend third-party claims because the policies are not liability policies that contain a duty to defend. *Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 638 So.2d 1132, 1137–38 (La. Ct. App. 1994); *Becnel v. United Gas Pipeline Co.*, 655 So.2d 409, 411–12 (La. Ct. App. 1995). The policy at issue is a first-party indemnity policy, covering Mim's direct property loss of the damaged crane as opposed to a third-party liability policy, which would cover Mim's legal obligation to others.

The only claim Mims brings forth, is that Arch failed to provide a defense to Mims in an arbitration proceeding that was conveniently only heard between Mims and Doggett.[18] The Arch Policy does not provide an unconditional duty to defend. The policy does, however, provide language such as: "we may elect to defend you against suits arising from claims of owners of property. We will do this at our expense."[19] The word "may" is permissive, while the word "shall" is mandatory. Thus, the logical interpretation is that the option to defend rests solely with Arch, meaning Arch had no duty to defend Mims.

Additionally, Arch maintains that Mims never requested that Arch defend them in the arbitration proceedings and never provided Arch with copies of the arbitration proceeding.[20] Since no opposition was filed by Mims the facts stated by Arch are uncontested. Therefore, Arch had no duty to defend Mims meaning there was no violation of the duty to defend by Arch.

---

[18] [Doc. No. 1-1, p. 6].
[19] [Doc. No. 20-2, p. 22].
[20] [Doc. No. 20-1, p. 16].

8

## III. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion [Doc. No. 20] is **GRANTED**, in its entirety, and all of Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 30th day of September, 2025.

> Terry A. Doughty
> United States District Judge